**SO ORDERED.**

**SIGNED this 29 day of March, 2018.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| **KIMBERLY NIFONG MITCHELL** | **CASE NO. 11-08880-8-SWH** |
| | **CHAPTER 11** |

**KIMBERLY NIFONG MITCHELL,**

    **PLAINTIFF,**                                                             **ADV. PRO. NO. 13-00043-8-SWH**

v.

**BRIAN KEESEE,**

    **DEFENDANT**

## ORDER DENYING PLAINTIFF'S MOTION TO REOPEN

The matter before the court is the Motion to Reopen Adversary Proceeding ("Motion to Reopen") filed by the Plaintiff on September 8, 2017, Dkt. 36. A response in opposition was filed by the Defendant on November 13, 2017, Dkt. 47 (the "Response"). A hearing was held in Wilmington, North Carolina on December 7, 2017, at which the court took the matter under

advisement. After consideration of the case record, pleadings, and arguments of counsel, the court will deny the Motion to Reopen for lack of subject matter jurisdiction.

## BACKGROUND

### A. Ms. Mitchell's Chapter 11 Bankruptcy

1. Petition and Schedules

Kimberly Nifong Mitchell ("Ms. Mitchell," the "Debtor," or the "Plaintiff") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 21, 2011. On her schedules, Ms. Mitchell listed assets in the aggregate amount of $1,617,701 and liabilities totaling $21,212,788.58. On Schedule A/B, Ms. Mitchell listed ownership of five pieces of real property, including three condominiums and two houses, and scheduled the total value of her real property as $1,420,000. Ms. Mitchell also scheduled ownership interests in a North Carolina corporation, Better Beach Rentals, Inc., and a North Carolina limited liability company named Deb 211, LLC. As of the petition date, Ms. Mitchell primarily earned income from management of rental properties and also received monthly child support from her ex-spouse, Mr. Brian Keesee ("Mr. Keesee" or the "Defendant").

Ms. Mitchell filed an amendment to Schedule B and Summary of Schedules on February 16, 2012, Dkt. 62. Question 16 of Schedule B requires a debtor to list "other liquidated debts owed to debtor including tax refunds." In response to this question, Ms. Mitchell explained the following:

> Pursuant to Settlement Agreement and Order dated May 18, 2011, Debtor is to be paid [$750,000] by her ex-husband [Mr. Keesee] upon the sale of real property owned by the ex-husband and consisting of approximately 96.32 acres located on Route 211 in Brunswick County, N.C. Upon information and belief, this property is subject to Deeds of Trust in favor of Crescent State Bank and Branch Banking & Trust. . . . *The Debtor estimates this debt cannot be collected.*

2

Dkt. 62 at 1 (emphasis added).

2. Mr. Keesee's Claim and Ms. Mitchell's Objection Thereto

Mr. Keesee filed a proof of claim in the amount of $1,850,000 on March 19, 2012, Proof of Claim No. 37-1. Mr. Keesee's claim was based on purported guaranties of Mr. Keesee's debts executed by Ms. Mitchell during the parties' marriage and related rights of contribution. On May 1, 2012, Ms. Mitchell objected to Mr. Keesee's claim, contending that Mr. Keesee failed to provide a basis for his claim, Dkt. 107 (the "Objection"). In the Objection, Ms. Mitchell further noted that she "[was] owed money by [Mr. Keesee]." On December 6, 2012, the court entered a consent order, in which it determined that Mr. Keesee's claim's balance was $0.00 (the "December 6 Order"). The December 6 Order provided that Mr. Keesee could amend his claim "within the deadlines established by the court." In addition, the December 6 Order did not address Ms. Mitchell's potential set off rights against Mr. Keesee's claim.

3. Chapter 11 Plan

The Debtor filed an amended chapter 11 plan of reorganization on September 5, 2012, Dkt. 176 (the "Plan"). The Plan provided for ten classes of creditors. Through her Plan, Ms. Mitchell proposed to sell or surrender three properties securing claims held by BB&T and SunTrust and allow both creditors to file deficiency claims. She also proposed to pay general unsecured creditors any proceeds from the sale of Deb 211, LLC and remit $3,000 per quarter to the general unsecured class for fifteen years.

Class IX of the Plan consisted of Mr. Keesee's unsecured claim in the amount of $1,850,000. In regard to treatment of Class IX, Ms. Mitchell first explained that "she believe[d] that Keesee's claim as presently asserted constitutes an unliquidated, contingent unsecured claim," as the December 6 Order determining Mr. Keesee's claim to be $0.00 had not yet been entered.

3

The Plan proposed to allow Ms. Mitchell to set off any claim held by Mr. Keesee in the amount of $750,000, as she maintained that she was owed this sum.

Ms. Mitchell's Plan contained the following language regarding funds for the implementation of the Plan:

> All funds necessary for the implementation of this Plan shall be obtained from funds (1) in the possession of the [Debtor]; (2) acquired in the ordinary course of business; (3) derived from the liquidation of property of the Estate; and (4) claims collected from other parties . . . .

Dkt. 177 at 13.

4. Disclosure Statement

The Debtor filed an amended disclosure statement on September 5, 2012, Dkt. 177. As required by 11 U.S.C. § 1125(b), she explained the events leading to her chapter 11 filing, plan feasibility, and her plan's proposed treatment of creditors' claims. In describing the history of her case, she explained:

> The Debtor is a resident of Brunswick County, North Carolina and is in the business of purchasing, developing, and managing real property in Brunswick County. *The Debtor derives her income from owning and managing rental real property and from the operation of her real estate management company*. . . . The Debtor also recently finalized a divorce . . . as a result . . . the Debtor was left with substantial unsecured liabilities on debts she personally guaranteed with her ex-husband. The Debtor intends to reorganize her current debts and continue her business activities. To reorganize, the Debtor intends to re-amortize certain debts . . . *and pay unsecured creditors from distributions from her income*.

Dkt. 177 at 4 (emphasis added).

5. Confirmation of the Chapter 11 Plan

The court conducted a hearing on confirmation of Ms. Mitchell's chapter 11 Plan on February 26, 2013 and confirmed the Plan in open court pursuant to 11 U.S.C. § 1129(b). Mr. Keesee did not object to confirmation. An order confirming plan was entered on April 30, 2013, Dkt. 260. The Effective Date of the Plan was May 14, 2013. At the time of confirmation,

4

the December 6 Order was in effect, such that Mr. Keesee's claim was reduced to $0.00.

<u>6. Vesting of Estate Assets</u>

Section XVI of the confirmed Plan provided that "all other property of the estate shall vest in the Debtor upon the effective date of the Confirmation Order." Dkt. 260 at 16. The only claim retained by the bankruptcy estate was against JP Double H Properties, LLC and its members. As a result, as of May 14, 2013, all other claims, including those related to the State Judgment, described more fully below, vested with Ms. Mitchell pursuant to 11 U.S.C. § 1141(b).

**B. Adversary Proceeding**

The Plaintiff initiated the instant adversary proceeding on March 5, 2013, prior to confirmation of the Plan. The adversary proceeding stemmed from an equitable distribution agreement incorporated and merged into Ms. Mitchell's and Mr. Keesee's divorce decree.

Ms. Mitchell and Mr. Keesee were married in North Carolina in 2003. In 2009, Ms. Mitchell initiated divorce and equitable distribution proceedings against Mr. Keesee. Following mediation, the parties entered into a consent agreement on February 11, 2011 regarding equitable distribution of their marital assets. This agreement was incorporated and merged into the parties' final divorce decree, which was entered in an order issued by the New Hanover County, North Carolina District Court on May 18, 2011. As a result of the agreement's incorporation into the divorce decree, it became a consent judgment, rather than an ordinary two-party contract (the "State Judgment").

The State Judgment provided for equitable distribution of a ninety-three acre tract of real property located on Highway 211 in Brunswick County, North Carolina (the "Property"). The Property's value was assessed at $5,695,000. At the time of the State Judgment's entry, Crescent

5

Bank held a promissory note in the original amount of $3,500,000, which was secured by a first-position deed of trust on the Property. The State Judgment sought to equitably distribute the Property's net value in the amount of $2,195,000. To that end, the State Judgment provided that upon a sale of the Property, Mr. Keesee would remit $750,000 of any sale proceeds to Ms. Mitchell. In exchange for a portion of the future sales proceeds, Ms. Mitchell conveyed her interest in the Property via a quit claim deed in favor of Mr. Keesee on June 9, 2011.[1]

Mr. Keesee then borrowed money, evidenced by two notes secured by two additional deeds of trust against the Property: (1) Branch Banking & Trust Company ("BB&T") in the amount of $400,000 and (2) Toll Brothers, Inc., in the amount of $100,000. In July of 2012, Oak Island Building Supply, Inc. ("Oak Island"),[2] a North Carolina corporation owned by Mr. Keesee, purchased the Crescent Bank note and deed of trust. On January 30, 2013, Mr. Keesee sold a 2.95 acre portion of the Property for the sum of $500,000 and did not remit any portion of the proceeds to Ms. Mitchell.

In her original adversary proceeding complaint filed on March 4, 2013, Ms. Mitchell alleged that Mr. Keesee breached the State Judgment by failing to pay her a portion of the January 2013 sale proceeds. She further contended that Mr. Keesee, through Oak Island, intended to foreclose on the Property, thereby circumventing the State Judgment's requirement to pay Ms. Mitchell proceeds from the *sale* of the Property. Specifically, Ms. Mitchell alleged three causes of action in the initial adversary proceeding complaint: (1) anticipatory repudiation; (2) breach of the State Judgment; and (3) unjust enrichment. She simultaneously filed a verified petition for attachment with her complaint, Dkt. 4 (the "Attachment Petition"). In an order entered on March

---

[1] The State Judgment did not provide Ms. Mitchell with any security interest in the Property to collateralize her right to payment.
[2] Oak Island Building Supply, Inc. converted from a North Carolina corporation to a North Carolina limited liability company in January of 2014.

6

21, 2013, the court granted the Plaintiff's petition for attachment against Mr. Keesee as to the Property and required Ms. Mitchell to furnish a $1,000 bond in accordance with North Carolina General Statute § 1-440.10.[3]

Mr. Keesee filed a motion to dismiss or alternatively abstain on May 6, 2013, A.P. Dkt. 12 and a memorandum of law in support of the motion, Dkt. 13. In the motion, Mr. Keesee contended that the adversary proceeding should be dismissed for lack of subject matter jurisdiction. Alternatively, he requested that the court mandatorily or permissively abstain pursuant to 28 U.S.C. S 1334(c). Ms. Mitchell filed a response on June 28, 2013, Dkt. 16. Following a hearing, the court entered an order granting permissive abstention on October 25, 2013, Dkt. 26 (the "Abstention Order").

In the Abstention Order, the court first acknowledged that it had subject matter jurisdiction over Ms. Mitchell's claims because "Mr. Keesee's alleged post-petition conduct interfered with the administration of the bankruptcy estate and with bankruptcy estate property." The court then explained permissive abstention was nonetheless appropriate due to the nature of the claims and the parties' ongoing domestic proceedings in state court. The court clarified that "domestic relations matters are preeminently matters of state law, and where possible, it is preferable that domestic matters be handled in state court." Abstention Order at 5. The court closed the adversary proceeding on November 21, 2013.

### C. Foreclosure of the Property and State Court Litigation

1. First Motion for Contempt

Shortly after the court issued its Abstention Order, Ms. Mitchell filed a motion for contempt in New Hanover County, North Carolina District Court on December 18, 2013, Case

---

[3] Mr. Keesee's answer to Ms. Mitchell's complaint indicates that the bond was never paid, such that a writ of attachment was never issued.

No. 09 CVD 5428 (the "Contempt Motion"). In the Contempt Motion, Ms. Mitchell sought to hold Mr. Keesee in civil contempt for failure to comply with the terms of the State Judgment. On March 4, 2014, Ms. Mitchell filed a voluntary dismissal of her Contempt Motion without prejudice.

2. Oak Island's Foreclosure and Subsequent Sale of the Property

Mr. Keesee personally defaulted on the note owned by Oak Island in January of 2014. As a result, Oak Island initiated and completed foreclosure proceedings against the Property in March of 2014 (the "2014 Foreclosure"). At the 2014 Foreclosure sale, Oak Island was the highest bidder. A final report and account of foreclosure sale was filed in Brunswick County on April 17, 2014. On the same day, the substitute trustee's deed of trust conveying the Property to Oak Island was recorded.

On June 5, 2014, BB&T filed a petition to determine existence of and ownership of surplus proceeds from the 2014 Foreclosure. Following a hearing, the Brunswick County Superior Court dismissed BB&T's petition based on lack of standing, lack of subject matter jurisdiction, and failure to state a claim for relief on October 16, 2014. D.E. 49 at 48. Importantly, Ms. Mitchell did not contest or challenge the 2014 Foreclosure in any manner. On September 23, 2014, Oak Island sold 83.177 acres of the Property to a third party for $5,800,000. Ms. Mitchell did not receive any portion of the sale proceeds.

3. First State Court Complaint

On July 31, 2014, Ms. Mitchell filed a complaint against Mr. Keesee in Brunswick County, North Carolina Superior Court (the "First State Complaint") and a notice of lis pendens, Case No. 14 CVS 1419. In her complaint, she alleged four causes of action: (1) breach of State Judgment; (2) fraud; (3) unjust enrichment; and (4) she sought to pierce the corporate veil of corporations and limited liability companies solely owned by Mr. Keesee in order to recover sales proceeds. Mr.

8

Keesee filed a motion to dismiss pursuant North Carolina Rules of Civil Procedure 12(b)(1) and 12(b)(6). Following a hearing on the matter, Judge Ebern T. Watson III dismissed all of Ms. Mitchell's claims for lack of standing and lack of subject matter jurisdiction in an order issued on June 29, 2015 (the "First State Order"). Ms. Mitchell immediately appealed the First State Order but voluntarily dismissed her appeal on November 2, 2015.

4. Second Motion for Contempt

Ms. Mitchell filed a second motion for contempt against Mr. Keesee in Brunswick County, North Carolina District Court on July 10, 2015, Case No. 09 CVD 5428 (the "Second Motion for Contempt"). In the Second Motion for Contempt, Ms. Mitchell re-alleged four causes of action identical to those asserted in the First State Complaint and sought to hold Mr. Keesee in both willful civil contempt and criminal contempt for failing to comply with the State Judgment. Following a hearing on February 4, 2016 in Brunswick County, North Carolina, Judge Robin W. Robinson dismissed all claims with prejudice, explaining that res judicata, collateral estoppel, and judicial estoppel precluded Ms. Mitchell from challenging the 2014 Foreclosure and Judge Watson's First State Order. The court also determined that Ms. Mitchell's right to receive proceeds and any other rights related to the Property were extinguished by the 2014 Foreclosure. Accordingly, Judge Robinson denied the Second Motion for Contempt and dismissed the matter with prejudice on February 22, 2016 (the "Second State Order").

### D. Issues and Parties' Contentions

In the Motion, Ms. Mitchell seeks to reopen the adversary proceeding pursuant to 11 U.S.C. § 350(b) and seeks to set aside the court's Abstention Order in order to pursue her three original causes of action against Mr. Keesee: (1) anticipatory repudiation; (2) breach of the State Judgment; and (3) unjust enrichment. In his Response, Mr. Keesee asserts that this court is barred from

9

hearing those claims or reconsidering the First State Order and Second State Order based upon the *Rooker-Feldman* doctrine. Mr. Keesee further contends that even if jurisdiction is proper, Ms. Mitchell's claims are not cognizable under North Carolina law.

## DISCUSSION

### A. Reopening an Adversary Proceeding

1. Section 350(b)

Section 350(b) of the Bankruptcy Code provides that "a case may be reopened in the court in which such case was closed to administer assets, to accord relief for the debtor, or for other cause." 11 U.S.C. § 350(b). The reopening of a case is within the bankruptcy court's discretion. *Hawkins v. Landmark Fin. Co.*, 727 F.2d 324 (4th Cir. 1984). Specifically, "the right to reopen a case depends upon the circumstances of the individual case . . . ." *Id.* at 326. In exercising its discretion, the bankruptcy court should be "guided by the parameters of § 350(b) and equitable considerations." *In re Strickland*, 285 B.R. 539 (Bankr. S.D. Ga. 2001). However, a bankruptcy court may decline to reopen a case "where it appears that to do so would be futile and a waste of resources." *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995).

The Bankruptcy Code does not define the term "case" for purposes of § 350(b). The court notes that there is a "circuit [] split as to whether a bankruptcy court ought to address a motion to reopen an adversary proceeding under § 350," and "there is no authority on this issue from the Fourth Circuit." *U.S. Dept. of Agriculture v. Sexton (In re Sexton)*, 529 B.R. 667, 672 (W.D. Va. 2015). However, this court previously evaluated a motion to reopen an adversary proceeding using the framework set forth in § 350(b) in *Janvier v. Sledge (In re Sledge)*, No. 03-02654-8-RDD, 2014 WL 1877609 (Bankr. E.D.N.C. May 8, 2014). In *Sledge*, the court invoked "the discretion afforded [to it] in these matters" and found that "sufficient cause exist[ed] to reopen an adversary

proceeding pursuant to § 350(b)" nine years after the proceeding was closed. *Id.* at *3. Accordingly, the court will consider Ms. Mitchell's Motion to Reopen in light of 11 U.S.C. § 350(b) and determine whether reopening the adversary proceeding is warranted in order to "administer assets, to accord relief for the debtor, or for other cause."

As a threshold matter, the court must determine whether it has subject matter jurisdiction over Ms. Mitchell's claims at present. If the court lacks subject matter jurisdiction, reopening the adversary proceeding is futile, as the court cannot adjudicate Ms. Mitchell's claims and would have to dismiss the action pursuant to Federal Rule of Civil Procedure 12(h)(3).

### B. Subject Matter Jurisdiction

1. Generally

Subject matter jurisdiction is "jurisdiction over the nature of the case and the type of relief sought; [or] the extent to which a court can rule on the conduct of persons or the status of things." BLACK'S LAW DICTIONARY (10th ed. 2014). Whether a court has subject matter jurisdiction over a matter is a "threshold question that relates to the power of the court to hear a case and must be resolved before a court addresses the merits of a case." *In re Cowart*, Adv. No. 15-2028, 2015 WL 6667776, at *3 (Bankr. M.D.N.C. Oct. 29, 2015) (citations omitted). A bankruptcy court has an independent duty to consider subject matter jurisdiction, and lack thereof may "be raised at any time by the parties or *by the court itself*." *In re Medlin*, 269 B.R. 591, 592–93 (Bankr. E.D.N.C. 2001) (emphasis added) (citations omitted); *see also* FED. R. CIV. P. 12(b)(1). If a court "determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

A bankruptcy court's jurisdiction "like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Section 1334 of Title 28

11

of the United States Code, along with 28 U.S.C. § 157(a) and the Standing Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984, provide this court with "original, but not exclusive, jurisdiction over every civil proceeding 'arising under' the Bankruptcy Code, 'arising in' the Bankruptcy Code, or 'related to' a bankruptcy case." *In re Brier Creek Corp. Center Assoc. Ltd.*, 486 B.R. 681, 685 (Bankr. E.D.N.C. 2013) (citations omitted).

While this court acknowledged that it had subject matter jurisdiction over the claims in its Abstention Order issued in 2013, it must consider whether it has subject matter jurisdiction *at present* before considering the claims' merits. To do so, the court must determine whether Ms. Mitchell's claims for relief "arise under" the Bankruptcy Code, "arise in" the Bankruptcy Code, or "relate to" her individual bankruptcy case as of the filing of the Motion to Reopen.

2. "Arising Under" Jurisdiction

Proceedings "arise under" Title 11 "if they invoke a 'substantive right created by federal bankruptcy law.'" *In re BMOC Inv'rs, LLC*, 2014 WL 5024072, at *2 (Bankr. E.D.N.C. Oct. 7, 2014) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)). "Arising under" jurisdiction exists when "the Bankruptcy Code itself creates the plaintiff's cause of action or 'if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law.'" *In re Baseline Sports*, 393 B.R. 105, 121-22 (Bankr. E.D. Va. 2008) (citations omitted). In establishing "arising under" jurisdiction, Congress sought to enable "bankruptcy courts . . . to hear any matter under which a claim is made under a provision of Title 11. For example, a claim [arising] under 11 U.S.C. § 522 would be cognizable by the bankruptcy court . . . ." H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977).

12

In this case, Ms. Mitchell's claims do not arise under Title 11. No substantive bankruptcy rights are implicated, and no question of federal bankruptcy law is presented. All three of Ms. Mitchell's claims against Mr. Keesee arise under North Carolina common law, such that the bankruptcy court does not have "arising under" jurisdiction over them.

3. "Arising In" Jurisdiction

A matter "arises in" title 11 when it is "not based on any right expressly created by Title 11, but nevertheless would have no existence outside of the bankruptcy." *In re 3G Properties, LLC*, 2010 WL 4027770, at *2 (Bankr. E.D.N.C. Oct. 14, 2010) (citing *Bergstrom v. Dalkon Shield (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996)). In *Bergstrom*, the Fourth Circuit found that the lower court had "arising in" jurisdiction because the claims "would have no practical existence *but for* the bankruptcy." *Bergstrom* at 372 (emphasis added). In evaluating the nature of a debtor's claims, "the proper jurisdiction focus is on the plaintiff's cause of action, rather than the factual situation from which the cause of action arose." *In re Baseline Sports*, 393 B.R. 105, 125 (Bankr. E.D. Va. 2008) (explaining that "something more than a factual and temporal connection to a bankruptcy case" is required to invoke a bankruptcy court's "arising in" jurisdiction). Examples of matters over which a bankruptcy court has "arising in" jurisdiction include "administrative matters, orders to turn over estate property, determination of the extent or priority of liens, contempt matters, and actions to recover post-petition accounts." *In re Redf Mktg., LLC*, 536 B.R. 646, 662 (Bankr. W.D.N.C. 2015) (quoting *In re Tate*, 253 B.R. 653, 661 (Bankr. W.D.N.C. 2000)).

Here, Ms. Mitchell's claims for relief against Mr. Keesee do not "arise in" Title 11. While they are based on the post-petition conduct of Mr. Keesee, it is clear that the claims exist independently from her individual bankruptcy and can be (and have been) brought in state court.

13

Importantly, Ms. Mitchell's claims would exist regardless of whether she filed a bankruptcy petition for relief, and the claims are not dependent on her bankruptcy case, as she previously brought them in state court. The court therefore declines to find "arising in" jurisdiction.

4. "Related To" Jurisdiction

The Supreme Court of the United States examined "related to" jurisdiction in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995). In that case, the Court explained that "related to" jurisdiction exists if "the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex* at 308 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984)). The Court expounded upon this standard and found that "an action is *related to* bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and in any way impacts upon the handling and administration of the bankruptcy estate." *Id*. (emphasis added).

The United States Court of Appeals for the Fourth Circuit considered "related to" jurisdiction in the post-confirmation context in *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007). In *Valley Historic*, the chapter 11 debtor brought suit against a secured creditor more than two years after confirmation of its plan. The debtor sought to recover damages based on two claims for relief: (1) a claim for pre-petition breach of contract by the defendant and (2) a claim for post-petition, pre-confirmation tortious interference. The debtor's plan did not include any provision regarding the potential use of litigation proceeds to satisfy creditors' claims. In evaluating the bankruptcy court's subject matter jurisdiction over the *Valley Historic* debtor's post-confirmation claims, the Fourth Circuit explained that a bankruptcy court should determine "whether there is a *close nexus* to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Valley Historic* at 838 (emphasis added)

14

(quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.*), 372 F.3d 154, 166 (3d. Cir. 2004)).

In adopting the "close nexus" test, the Fourth Circuit explained that the inquiry "insures that the proceeding [at issue] serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction." *Valley Historic* at 837. In other words, in order for a bankruptcy court to have "related to" jurisdiction over a debtor's post-confirmation claim, "the claim must affect an integral aspect of the bankruptcy process." *Id*. at 836 (citations omitted). Those matters that "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

Applying that standard, the Fourth Circuit declined to find a "close nexus" between the *Valley Historic* debtor's claims for relief and its plan, such that "related to" jurisdiction did not exist. In its analysis, the Fourth Circuit concluded that "no conceivable bankruptcy administration purpose [would be] served by the Debtor's adversary proceeding because the Plan made no provision for the use of any recovery from the adversary proceeding, but instead provided for the satisfaction of the Debtor's obligations 'entirely from post-petition rents and earnings. . . .'" *Id*. at 837.

In evaluating whether a "close nexus" exists, a bankruptcy court may consider several factors, including whether a debtor's chapter 11 plan has been confirmed and substantially consummated. *See C.R. Peele Constr. Co., Inc. v. DTC Engineers & Constructors, LLC*, Adv. Pro. No. 12-00138-8-RDD, 2013 WL 944924, at *2 (explaining that "the expansive nature of 'related to' jurisdiction [ ] turns in large measure on two important events: confirmation of a debtor's plan of reorganization and the plan's substantial consummation"). In *C.R. Peele Construction Co., Inc.*, this court declined to find "related to" jurisdiction where the debtor's plan was confirmed and

15

substantially consummated and concluded that the plaintiff-debtor's claims were "merely tangential . . . to overall reorganization."*Id.*; *see also Ohnmacht v. Comm. Credit Group, Inc. (In re Ohnmacht)*, Adv. Pro. No. 14-00213-8-DMW, 2017 WL 5125531, at *14 (Bankr. E.D.N.C. Nov. 3, 2017) (weighing post-confirmation jurisdiction factors and declining to find a "close nexus" and "related to" jurisdiction where the debtors chapter 11 plan was substantially consummated two years prior to the court's exercise of jurisdiction).

A bankruptcy court may also consider a chapter 11 plan's proposed funding source when evaluating "related to" jurisdiction. *Grathwol v. Coastal Carolina Developers (In re Grathwol)*, 2015 U.S. Dist. LEXIS 3113 (E.D.N.C. Jan. 9, 2015), *subsequently aff'd*, 628 F. App'x. 193 (4th Cir. 2016). In *Grathwol*, the United States District Court for the Eastern District of North Carolina concluded that while the debtor's plan was not yet substantially consummated, the bankruptcy court nonetheless lacked "related to" jurisdiction, explaining that:

> [T]he Plan . . . makes clear that [it will] be funded by the Debtor's regular business activities. It strains the interpretation of 'continued operation [of] her business activities' to include all manner of litigation brought against the debtor's businesses and business partners. Given that the plan provides no indication that the Debtor intended to fund the plan through pursuing any state-law actions, this court cannot view the adversary proceedings as being closely related to the plan itself.

*Id.* at *13; The *Grathwol* court further explained that "the mere possibility of increasing the recovery to creditors is insufficient, standing alone, to establish the 'close nexus.'" *Id.* at *13.

In this case, Ms. Mitchell's Plan is substantially consummated pursuant to 11 U.S.C. § 1101(2), as she has surrendered all property as required by the Plan, has assumed management of all property to be dealt with by the Plan, and has commenced distribution to all classes under the Plan. Her most recent quarterly post-confirmation report indicates that only three of ten Plan classes are receiving ongoing quarterly payments towards their claims as of December 2017: Bank

16

of America based upon a reamortized secured obligation, SunTrust Mortgage based upon a reamortized secured obligation, and general unsecured creditors.

In addition, all property of the estate, except for causes of action against JP Double H Properties, LLC and its members, vested with Ms. Mitchell on May 14, 2013. As a result, the claims for relief against Mr. Keesee are no longer property of the estate, and estate property is no longer implicated in the instant adversary proceeding.

Finally, while Ms. Mitchell's Plan provides that it may be funded in part by amounts "collected from other parties," it does not expressly contemplate the use of potential recovery from Mr. Kessee, or any other individual, recovered from state court litigation to fund her Plan. Instead, as was clearly set forth in her Disclosure Statement and like the *Valley Historic* debtor, she anticipated funding the Plan with regularly earned income from her business activities and investment properties. If Ms. Mitchell were to recover from Mr. Keesee, those proceeds would not expedite, increase, or otherwise affect payments to her creditors. Rather, any proceeds recovered from Mr. Keesee would benefit Ms. Mitchell personally and directly, and no benefit would be recognized by her bankruptcy estate or creditors.

In short, Ms. Mitchell's plan is substantially consummated, no estate property is implicated in the adversary proceeding, and no recoverable proceeds will benefit creditors. Based on these facts, and at this point in time, the court finds that no "consummation, execution, or administration" purpose is to be served by the instant adversary proceeding, and it is clear to the court that there is an "apparent disconnect between the adversary proceeding and [the debtor's] plan." *In re Grathwol*, 505 B.R. 201, 205 (Bankr. E.D.N.C. 2014) (citations omitted).

As a result, the court declines to find requisite "close nexus" between Ms. Mitchell's claims for relief and the administration, execution, or consummation of her Plan and therefore declines to find "related to" jurisdiction over her claims. Because the court lacks subject matter jurisdiction, the court declines to reopen the adversary proceeding pursuant to 11 U.S.C. § 350(b) and need not proceed to the merits of Ms. Mitchell's claims.

.

## CONCLUSION

Based on the foregoing, the court concludes that it lacks subject matter jurisdiction over Ms. Mitchell's claims. Accordingly, the Motion to Reopen Adversary Proceeding is **DENIED**.